IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN PATTERSON INTERIORS, INC., *an Illinois corporation*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| | ) Case No. 11 C 221 |
| RANDALL TOBIAS, | ) ) |
| Defendant. | ) ) |
| RANDALL TOBIAS, | ) ) |
| Counter-Plaintiff/ Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| SUSAN PATTERSON INTERIORS, INC., *an Illinois corporation*, | ) ) ) |
| Counter-Defendant, | ) ) |
| and | ) ) |
| SUSAN PATTERSON, *individually*, | ) ) |
| Third-Party Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

      The parties tried this case before the Court in a three day bench trial. This Memorandum Opinion and Order sets forth the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. For the following reasons, the Court finds:

1

- for *Defendant Randall Tobias* on Plaintiff Susan Patterson Interiors, Inc.'s claim for breach of contract against Defendant (the only count in the Complaint);

- for *Counter-Plaintiff Randall Tobias* on his counterclaim for breach of contract against Counter-Defendant Susan Patterson Interiors, Inc. (Count I of the Counterclaims/Third-Party Complaint);

- for *Counter-Defendant Susan Patterson Interiors, Inc.* on Counter-Plaintiff Randall Tobias' counterclaim for consumer and common-law fraud (Counts II and III of the Counterclaims/Third-Party Complaint); and

- for *Third-Party Defendant Susan Patterson (individually)* on Third-Party Plaintiff Randall Tobias' claim for consumer and common-law fraud (Counts II and III of the Counterclaims/Third-Party Complaint).

## I. Background

This action arises out of a long-standing professional relationship between the parties. Ms. Susan Patterson, a citizen of Illinois, is the president of Susan Patterson Interiors, Inc. ("SPI"), an Illinois corporation that provides interior decorating services. (Compl.[1] & Ans. to Compl.[2] ¶¶ 1, 3.) Randall Tobias is a citizen of Indiana. (*Id.* ¶ 2; Counterclaims/TPC[3] & Ans. to Counterclaims/TPC[4] ¶ 1.)

For over a decade, Ms. Patterson has decorated numerous properties for Mr. Tobias in different states. During the course of that relationship, Ms. Patterson was affiliated with different decorating firms, including Slifer Designs Co., Patterson Shonberg Interiors, Inc., and

---

[1] Citations to "Compl." refer to SPI's Complaint, filed at docket # 3-1.

[2] Citations to "Ans. to Compl." refer to Mr. Tobias' Answer to the Complaint, filed at docket # 6.

[3] Citations to "Counterclaims/TPC" refer to Mr. Tobias' Amended Counterclaims and Third Party Complaint, filed at docket # 36

[4] Citations to "Ans. to Counterclaims/TPC" refer to the Answer to the Amended Counterclaims and Third Party Complaint, filed at docket # 38.

most recently, SPI. Ms. Patterson generally "was compensated for those" interior decorating services with the terms of the contract to be billed at cost plus 75% basis for interior design furnishings, fabrics and lighting, cost plus 25% for antiques, and that specification work and travel was on an hourly basis of $125 per hour for Susan Patterson for $75 per hour for associates." (Counterclaims/TPC & Ans. to Counterclaims/TPC ¶ 6.) The parties generally did not execute separate contracts for each project but instead typically operated under these terms.

On or before February 3, 2009, Ms. Patterson, on behalf of SPI, "met with [Mr. Tobias] in Captiva, Florida, and discussed the engagement of her firm's services for the interior design of [the Tobias] home in Carmel, Indiana." (Compl. & Ans. to Compl. ¶ 3.) At that time, the parties agreed that SPI "would perform interior decorating services for the Tobias property in Carmel, Indiana, and that said services would include, but [were] not limited to, the selection and purchase of product and materials for the [Tobias] home." (*Id.* ¶ 5.) SPI thereafter purchased products and materials, and issued invoices to Mr. Tobias for services rendered. (*Id.* ¶¶ 6-7.) The relationship between Ms. Patterson and Mr. Tobias subsequently soured.

On December 10, 2010, SPI filed a one count Complaint against Mr. Tobias in the Circuit Court of Cook County, Illinois.[5] In the Complaint, SPI alleges that Mr. Tobias breached an interior decorating contract between the partes by failing to pay all amounts owed for services rendered. Mr. Tobias thereafter removed the action to this Court pursuant to 28 U.S.C. §§

---

[5]The Complaint also named Deborah Tobias as a Defendant. Deborah Tobias in turn joined Mr. Tobias in his counterclaims and third party claims against SPI and Ms. Patterson. There is no basis in the evidence presented at trial to impose liability on Deborah Tobias, nor is there any basis for her to recover against SPI and/or Ms. Patterson. After the close of evidence, the Court dismissed Deborah Tobias as a defendant, with prejudice and without objection. The Court also granted Deborah Tobias' oral motion to dismiss her as both a counter-plaintiff and third-party plaintiff.

1331(a), 1441, and 1446 (R. 1, 3), and on January 19, 2011, filed an Answer and Affirmative Defenses. (R. 6.)

Additionally on January 19, 2011, as amended on May 10, 2011, Mr. Tobias filed a consolidated "Counterclaims and Third Party Complaint." (R. 7, 36.) Count I asserts a claim for breach of contract against SPI. Counts II and III assert claims for statutory and common law fraud against SPI and Ms. Patterson (individually).[6]

On August 14, 2012, the case proceeded to trial before the Court, sitting without a jury. Trial lasted three days. At the end of the day on August 15, 2012, the Court continued the trial until mid-September, with the parties' agreement, to permit the parties to engage in settlement discussions. Those discussions proved unsuccessful, and the trial resumed on September 17, 2012 and concluded that same day. During the course of trial, the following witnesses testified: Ms. Patterson; Mr. Tobias; Ms. Marianne Tobias (ex-wife of Mr. Tobias); and Ms. Meg Linden (accountant/staff for Mr. Tobias).

## II.   Standard of Decision

Where, as here, an action is "tried on the facts without a jury," Rule 52 requires the district court to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a); *see also See Khan v. Fatima*, 680 F.3d 781, 785 (7th Cir. 2012) ("The trier of fact must decide whom to believe (and how much to believe) on the basis of the coherence and plausibility of the contestants' testimony, corroboration or contradiction by other witnesses, and other clues to falsity and veracity."). The district court must "explain the grounds" of its decision and

---

[6]Mr. Tobias additionally asserted claims of assumpsit and unjust enrichment, but at the final pretrial conference on August 8, 2012, the Court granted his oral motion to voluntarily dismiss these claims. (R. 90, Minute Entry; *see also* Transcript of Proceedings on 8/8/12.)

4

otherwise demonstrate a "reasoned, articulate adjudication." *Aprin v. United States*, 521 F.3d 769, 776 (7th Cir. 2008) (citing *Jutzi-Johnson v. United States*, 263 F.3d 753, 758 (7th Cir. 2001) ("the judge must indicate the reasoning process that connects the evidence to the conclusion").

Here, in adjudicating the parties' claims, the Court has considered the totality of the evidence presented at trial. The Court has carefully considered the weight to be accorded the evidence, including the credibility of each witness. In assessing credibility, the Court considered, among other things, each witness' demeanor and facial expressions; intelligence; ability and opportunity to see, hear, or know the matters about which the witness testified; memory; potential for bias; and, significantly, the believability of the witness' testimony in light of the other evidence presented. *See, e.g.*, *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985) (applying the well-settled principle that the trial judge is in the best position to assess witness credibility).

The Court has additionally considered the parties' arguments and the applicable law. The elements of the parties' claims are set forth below. The parties agree that Illinois law governs each claim in this case. This decision on the merits incorporates the Court's findings of fact and conclusions of law, as required by Rule 52. *See* Fed R. Civ. P. 52(a); *Kahn*, 680 F.3d at 786.

**III.   Analysis**

    **A.   Breach of Contract – Complaint; Counterclaim, Count I**

The Court begins with the two claims for breach of contract: (1) SPI's claim against Mr. Tobias; and (2) and Mr. Tobias' counterclaim against SPI. After setting forth the elements of breach of contract under Illinois law, the Court will analyze each claim separately.

1. **Legal Standard**

Under Illinois law, a breach of contract claim requires the plaintiff to prove the following elements by a preponderance of the evidence: "'(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 286 Ill. Dec. 734, 814 N.E.2d 960, 967 (2004)); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (citing *Assoc. Benefit Serv. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007); *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 30, 300 Ill. Dec. 601, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006)).

2. **Analysis, Breach of Contract – SPI v. Mr. Tobias**

SPI argues that Mr. Tobias breached a contract for interior decorating services related to his home in Carmel, Indiana. (Compl. ¶¶ 3-4.) SPI further contends that under the contract, SPI "would perform interior decorating services," including "the selection and purchase of product and materials" for Mr. Tobias' home. (*Id.* ¶ 5.) According to SPI, the terms of the alleged contract provided for "costs plus 75%" plus an additional 3.8% mark-up on delivery and installation. (*Id.* ¶ 4.) SPI claims that Mr. Tobias breached the contract by failing to pay SPI amounts owed for services rendered.

The Court finds for Mr. Tobias on SPI's claim for breach of contract. First, SPI has failed to establish the existence of the contract it contends governs the project. SPI's theory of the case rests on the alleged existence of a contract admitted into evidence as SPI's Exhibit B. That alleged contract, however, reflects an "agreement . . . between Randall Tobias (client) and

Patterson Shonberg Interiors, Inc." (PX-B.) Although Ms. Patterson signed this agreement in 2001 on behalf of Patterson Shonberg Interiors, Inc., that entity is not a party to this action. SPI has not offered any evidence or argument to suggest that Patterson Shonberg Interiors, Inc. and SPI are the same entity. Under SPI's theory, therefore, it has not established, by a preponderance of the evidence, that Exhibit B was the *operative contract* between the parties. That said, as discussed below, Mr. Tobias has established the existence of an implied contract based on the parties' prior dealings and course of conduct over many years. (*See* discussion *infra* at pages 9-11.)

Second, even if SPI could establish the existence of a valid and enforcement contract between the parties, SPI has failed to establish that Mr. Tobias breached the contract. SPI has neither presented sufficient evidence to support a claim of breach of contract, nor has SPI even offered a coherent theory of breach. Indeed, SPI's claim of loss fluctuated significantly throughout this litigation – for example, SPI requested $82,645.64 in the Complaint (Compl. at 5), $1,323,969.54 on the eve of trial (R. 83), and $613,606.00 in opening statements at trial (8/14/12(a.m.) Trial Tr. at 3). During trial, SPI argued that Mr. Tobias failed to pay SPI $144,463.00 owed under the alleged contract. (9/17/12(p.m.) Trial Tr. at 82.) SPI failed, however, to prove that Mr. Tobias owed SPI any money for services rendered. In fact, as described below, the evidence established to the contrary – Mr. Tobias overpaid SPI.

SPI attempted to substantiate its damages claim with an unhelpful exhibit binder that contained hundreds of unorganized exhibits. Putting aside Mr. Tobias' procedural objections to

the exhibit binder,[7] its contents remained largely unexplained throughout trial. As the Court commented after the close of all evidence, SPI did not present any coherent theory of breach that would allow the Court to find for SPI. The exhibits, at best, represent an amalgamation of hundreds of invoices, documents and other records, but without necessary context or explanation. The exhibits were not placed in context by any witness. Although SPI claims that Mr. Tobias owes it money based on certain invoices, SPI did not identify a single invoice, properly billed, that remains unpaid.[8] The party seeking relief, of course, has the burden of persuasion, and that party cannot simply throw a mountain of unexplained and confusing evidence at the fact-finder and expect to meet its burden. *Cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs").

In addition to the exhibit binder, SPI relies heavily on the testimony of its principal, Ms. Patterson, who testified that she reviewed all of the relevant invoices and determined that Mr. Tobias owes SPI an amount of money. Despite the volumes of invoices and documents, neither SPI nor Ms. Patterson offered any support for Ms. Patterson's testimony. Without documentary support, the Court places minimal weight on Ms. Patterson's testimony. Indeed, her testimony lacks credibility in light of the entirety of the trial record. This is not a case where records do not exist. To the contrary, the evidentiary record contains hundreds of invoices and other records, and neither SPI nor Ms. Patterson identified any record support for Ms. Patterson's bald

---

[7] Mr. Tobias moved to strike SPI's exhibit binder on numerous bases, including the timeliness of its production. The Court took the motion to strike under advisement. Although the motion may well have merit, the Court denies it as moot in light of this opinion.

[8] There was some evidence that Mr. Tobias underpaid SPI by approximately $10,000, but after SPI pointed this out to Mr. Tobias, he promptly accounted for and credited this amount to SPI. (PX-J.)

assertion that Mr. Tobias owes money to SPI. Ms. Patterson testified that she has reviewed certain documents and made calculations by hand, but when pressed on cross-examination, she could not point to any documents or calculations in the record to support her testimony. The Court even continued the trial for approximately one month to permit SPI to locate and develop existing evidentiary support for its claim, but SPI came back with nothing.[9]

Accordingly, for all of the reasons discussed above, the Court finds for Mr. Tobias on SPI's claim of breach of contract.

### 3. Analysis, Breach of Contract – Mr. Tobias v. SPI

In Count I of his Counterclaim, Mr. Tobias asserts a claim for breach of contract against SPI. (Counterclaims ¶¶ 11-13.) Mr. Tobias alleges that SPI breached an interior decorating contract between the parties by over-charging Mr. Tobias through excessive and duplicate invoices, among other things. (*Id* ¶¶ 13(a)-(c).) SPI denies this allegation, and does not assert any affirmative defenses.

The Court finds for Mr. Tobias on Count I of its Counterclaims. Mr. Tobias's counterclaim is almost an inverse of SPI's claim: he alleges that SPI actually owes *him* money arising out of the same set of invoices related to the residence in Carmel, Indiana. He has met his burden on this claim.

---

[9]The Court appreciates the procedural history of this litigation. SPI filed its Complaint in 2010. Mr. Tobias removed the case to federal court, and soon therefore SPI's counsel withdrew. (R. 18). SPI then retained new counsel for it and Ms. Patterson individually, but that counsel also withdrew. (R. 46.) Current counsel filed her notice of appearance on April 23, 2012, and has worked diligently in prosecution of SPI's claim.

As an initial matter, Mr. Tobias has established the existence of an agreement between the parties, namely a contract implied in fact.[10] There is no written agreement signed by both parties, but under Illinois law, "[c]ontracts implied in fact arise under circumstances which, according to the ordinary course of dealing and the common understanding of men [and women], show a mutual intention to contract." *Dynergy v. Mktg. Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (quoting *Mowatt v. City of Chi,*, 292 Ill. 578, 127 N. E. 176, 177 (1920)); *see also Schivarelli v. Chi. Transit Auth.*, 355 Ill. App. 3d 93, 101, 291 Ill. Dec. 148, 823 N.E.2d 158 (Ill. App. Ct. 2005) ("In a contract implied in fact, a contractual duty is imposed by reason of a promissory expression inferred from facts, circumstances and expressions by the promisor showing an intent to be bound. Such contract may be proved by circumstances showing that the parties intended to contract and by the general course of dealing between them.").

Here, based on the testimony of Mr. Tobias and Ms. Linden, which the Court credits, and making certain inferences from credible portions of Ms. Patterson's testimony, Mr. Tobias has established by a preponderance of the evidence the existence of an implied contract between him and SPI. For over a decade, the parties had a professional relationship in which Ms. Patterson would provide interior decorating services and materials to Mr. Tobias, in exchange for compensation. The terms of the implied contract at issue are consistent with the parties' typical terms: cost plus 75% for interior design furnishings, fabrics and lighting; cost plus 25% for antiques; and $75-125/hour for specification work and travel. These terms are generally consistent with an unsigned contract between Mr. Tobias and SPI that Mr. Tobias admitted into

---

[10]Neither party pleads or argues that the Illinois statute of frauds is a bar to enforcement of the alleged contract. The Court therefore does not consider that issue.

evidence as DX-1. Ms. Patterson even admitted in her deposition that DX-1 was the operative contract. No credible evidence, however, suggests that Mr. Tobias ever agreed to pay SPI a 3.8% fee for delivery and installation, as SPI claims in the present litigation. That term is therefore not part of the contract at issue.

Mr. Tobias has additionally met his burden on the remaining elements of his breach of contract claim. He offered credible testimony that he paid SPI all amounts owed. He sought to work with SPI's principal, Ms. Patterson, to ensure timely and appropriate payment. If he had a question about a charge, Mr. Tobias would ask for back-up from SPI, which was not always able to provide it. Much of the billing was handled by Ms. Linden, who works for Mr. Tobias.

Ms. Linden is a certified public accountant who has worked for Mr. Tobias since 2004. Ms. Linden had responsibility in Mr. Tobias' office for reviewing and paying any invoice that SPI submitted to Mr. Tobias. In Ms. Linden's words: "If there was an invoice from Susan Patterson Interiors, it was part of my job duties [to take care of it]."

Ms. Linden testified at trial and offered credible testimony. She testified that, as the parties began to dispute billing items:

> I was asked to objectively look at all the bills that [SPI] had sent [Mr. Tobias] and all the payments he made to [SPI] and determine [with] the assistance of supplier documents that [SPI] was able to provide to me whether he had been billed accurately.

Ms. Linden personally reviewed each invoice and identified each payment from Mr. Tobias that matched each invoice. She also confirmed whether Mr. Tobias received the product or services at issue. Ms. Linden created a comprehensive spreadsheet that details the specific invoices, dollar amounts and otherwise that show Mr. Tobias' overpayments to SPI. (DX-51 & 52.) The Court admitted this spreadsheet and the supporting documents into evidence. (DX-1-76, 79.)

Based on her objective review of the underlying documents and her personal knowledge, Ms. Linden testified that Mr. Tobias overpaid SPI in the amount of $264,674.25.

Although this figure does not include SPI's claim at trial for unpaid "mark-up on labor" (specifically, a 3.8% fee for delivery and installation), SPI has not presented any evidence or pointed to anything in the record – other than Ms. Patterson's incredible and unsupported testimony – that Mr. Tobias ever agreed to a markup on delivery and installation in addition to the "cost plus 75%" on goods. SPI thus cannot recover those amounts.

Having the benefit of observing Ms. Linden's testimony, including her courtroom demeanor, the Court finds Ms. Linden's testimony to be credible. Although she works for Mr. Tobias, SPI has not suggested bias and indeed, Mr. Tobias too credibly testified that he sought to pay SPI all amounts owed. Ms. Linden is a certified public accountant and testified that she personally and objectively reviewed and gathered hundreds of underlying documents to determine what amounts are owed and to whom. Those documents are in evidence. (*See, e.g.*, DX-1-76, 79.) Ms. Linden also credibly testified that she repeatedly asked for Ms. Patterson's input on the spreadsheet, but Ms. Patterson was unable or unwilling to identify specific invoices that remained unpaid.

Ms. Linden's testimony and the spreadsheet that she created are largely undisputed. Ms. Patterson, in fact, admitted during her testimony that some invoices submitted to Mr. Tobias were duplicates. Although Ms. Patterson further testified that she accounted for these amounts elsewhere, she could not explain where or how, and did not identify any documentation to support her assertions. On cross-examination, SPI failed to poke holes in Ms. Linden's testimony. In response to questioning, Ms. Linden adequately and credibly explained the basis

for her testimony, including the dollar amounts and invoices about which she testified. Indeed, during trial, Ms. Linden agreed to exclude approximately $10,000 in overcharges from her initial calculations in light of SPI's contention that the amount did not represent an overcharge. On cross-examination, she also readily agreed, in response to counsel's questioning, to remove $246.40 in sales tax that she inadvertently included.

For all of these reasons, Mr. Tobias has established by a preponderance of the evidence that he substantially performed under the contract, that SPI breached the contract by overcharging him, and that he was damaged in the amount of $264,427.85.

### 4. Conclusion

The Count finds for Defendant Randall Tobias on Plaintiff SPI's breach of contract claim, and for Counter-Plaintiff Randall Tobias on his breach of contract claim against Counter-Defendant SPI. The Court awards Mr. Tobias $264,427.85.

### B. Consumer and Common Law Fraud – Counterclaims/Third Party Complaint Counts II & III

The remaining claims involve intentional torts. In Counts II and III of the Counterclaims/Third-Party Complaint, Mr. Tobias alleges that SPI and Ms. Patterson violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505 *et seq.*, and additionally committed common law fraud.

### 1. Legal Standard

To prevail on a claim under the Consumer Fraud Act, a plaintiff "must prove: (1) a deceptive act or practice by [the defendant]; (2) that the act or practice occurred in the course of conduct involving trade or commerce; (3) that [the defendant] intended [the plaintiff] to rely on the deception; and (4) that actual damages were proximately caused by the deception." *Oshana*

13

*v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The plaintiff must prove these elements by a preponderance of the evidence. *See Fox v. Heimann*, 375 Ill. App. 3d 35, 313 Ill. Dec. 366, 872 N.E.2d 126 (Ill. App. Ct. 2007) ("[T]he appropriate standard of proof for a claim brought under the Consumer Fraud Act is the preponderance of the evidence.") (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 313 Ill. Dec. 366, 835 N.E.2d 801 (Ill. App. Ct. 2007)).

To prevail on a claim of common law fraud, the plaintiff must prove: "(1) a false statement of a material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881-82 (7th Cir. 2005). Under Illinois law, "the presumption is that all persons are honest, and allegations of common law fraud must be established by clear and convincing evidence." *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 404 Ill. App. 3d 438, 451, 343 Ill. Dec. 355, 934 N.E.2d 679 (Ill. App. Ct. 2010); *see also Cwikla v. Sheir*, 345 Ill. App. 3d 23, 280 Ill. Dec. 158, 801 N.E.2d 1103 (Ill. App. Ct. 2003) ("The elements of fraud must be proven by clear and convincing evidence.") (citing *In re App. of Rosewell*, 106 Ill.2d 311, 318-19, 88 Ill. Dec. 28, 478 N.E.2d 343 (1985)).

### 2. Analysis – Counts II and III

To prevail on either Count II or III, Mr. Tobias must prove that SPI or Ms. Patterson acted with intent. Although the statute and the common law use slightly different iterations of intent, the element is largely the same – intent that another rely on a misstatement or deception. The element of intent is lacking here – Mr. Tobias has failed to establish intent by preponderance

14

of the evidence, much less by clear and convincing evidence.

Mr. Tobias presented evidence that, he argues, tends to show that SPI and Ms. Patterson manipulated invoices and attempted to conceal costs from the client. (*See* DX-12.) Based on the evidence, the Court finds that those invoices are the product of simple mismanagement and disorganization. The evidence shows that Ms. Patterson struggled to keep organized billing records related to the Tobias project. It is clear that the billing on this project, which was in the seven figures, turned into a matter that was beyond Ms. Patterson's capacity to handle. Although Ms. Patterson may have been careless in her billings, the evidence does not establish that she acted with nefarious intent. Accordingly, Mr. Tobias has not met his burden on Counts II and III.

### 3. Conclusion

The Count finds for Counter-Defendant SPI and Third-Party Defendant Susan Patterson on Counter-Plaintiff/Third-Party Plaintiff Randall Tobias' claims under the Consumer Fraud Act and common law fraud.

## IV. Conclusion

For all of the reasons set forth above, the Court finds:

- for *Defendant Randall Tobias* on Plaintiff Susan Patterson Interiors, Inc.'s claim for breach of contract against Defendant (the only count in the Complaint);

- for *Counter-Plaintiff Randall Tobias* on his counterclaim for breach of contract against Counter-Defendant Susan Patterson Interiors, Inc. (Count I of the Counterclaims/Third-Party Complaint), and awards Mr. Tobias damages in the amount of $264,427.85 without regard to prejudgment interest, which is not appropriate under the circumstances of this case;

- for *Counter-Defendant Susan Patterson Interiors, Inc.* on Counter-Plaintiff Randall Tobias' for consumer and common-law fraud (Counts II and III of the Counterclaims/Third-Party Complaint); and

15

- for *Third-Party Defendant Susan Patterson (individually)* on Third-Party Plaintiff Randall Tobias' claim for consumer and common-law fraud (Counts II and III of the Counterclaims/Third-Party Complaint).

The Court will enter judgment consistent with these findings. The parties shall bear their own costs. *See* Fed. R. Civ. P. 54(d).

DATED: October 1, 2012

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge